UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAURA A. JENNINGS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CHUCK HAGEL, Secretary of the )<br>Department of Defense, )<br>)<br>Defendant. ) | Cause No. 1:11-cv-1455-WTL-DML |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Defendant's motion for summary judgment. Dkt. No. 44. The Plaintiff in this case is proceeding pro se and was provided with the notice required by this Court's local rules. Dkt. No. 47. The Plaintiff has not responded and the time for doing so has now passed. Accordingly, the motion is ripe for ruling.

## I.   STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court accepts as true the admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required

to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

The fact that the Plaintiff has not responded to the Defendant's motion does not mean that summary judgment will be entered automatically. Rather, the Court will only grant summary judgment "if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it," Fed. R. Civ. P. 56(e)(3), and the Court must therefore independently determine whether the Defendant is entitled to it.

## II.     BACKGROUND

The facts taken in the light most favorable to the Plaintiff, the non-moving party, are as follow.

Plaintiff Laura Jennings began working as a term Contact Representative in the Military Pay Contact Center (the "Center") located in Indianapolis, Indiana, on January 19, 2010. The Center is part of the Defense Finance and Accounting Service ("DFAS"), an office within the Department of Defense ("DOD"). Defendant Chuck Hagel is the Secretary of the DOD.

Contact Representatives provide customer service to United States Army and Air Force service members, retirees, and others who have questions about their pay. Representatives resolve primarily telephonic inquiries but may also respond to verbal, written, or electronic inquiries. Representatives use a variety of electronic databases and systems to research issues and then provide responses to the customer. The databases Representatives access contains personal information subject to handling and disclosure requirements.

The Center consists of 23 Contact Representatives and 2 Lead Contact Representatives. As a term Contact Representative, the duration of Jennings' employment was not to exceed January 19, 2011, and was subject to a one-year probationary period. At the time Jennings

applied for the term Contact Representative position, there was also a posted vacancy for a temporary Contact Representative position. According to Hagel, a "term" position does not exceed one year and one month, while a "temporary" position does not exceed twelve months. Jennings also applied for the temporary position.

Center employees work three shifts – 7:30 a.m. to 4:00 p.m., 8:30 a.m. to 5:00 p.m., and 9:30 a.m. to 6:00 p.m. – in order to provide sufficient hours for customers to contact the Center. When hired, Jennings was assigned to work the 9:30 a.m. to 6:00 p.m. shift. However, Jennings rode the bus to work and the bus schedule was not conducive to a 9:30 a.m. arrival, so her supervisor Mildred Clegg permitted her to work a "flex" schedule. Jennings would arrive at work between 8:00 and 8:30 a.m. and simply clock in when she arrived.[1] Jennings Dep. at 41:4.

Beginning in March 2009, DFAS issued and extended a job vacancy announcement for permanent Contact Representative positions. Clegg told Jennings about the position, gave her a copy of the job announcement, and suggested that she apply for the position.

At some point, Jennings asked Clegg about the position. Clegg told Jennings that her resume was in an online database called Resumix but had been formatted incorrectly. Clegg told Jennings to resubmit her resume. However, according to Jennings, she had never submitted a resume on the Resumix database; her resume was already on a different job application database called USA Jobs. Jennings told Clegg that she was already on a "continuous bulletin through personnel" and she did not resubmit her resume.

---

[1] Hagel contends that flex schedules are not permitted at the Center, but Jennings testified that she was permitted to work on a flex schedule. At this stage in the proceedings, the Court resolves all factual disputes in favor of Jennings.

The DFAS Recruiting and Placement Office did not receive any applications from Jennings for permanent Contact Representative positions in 2010. As a result, she was not considered for a permanent position.

On June 21, 2010, Jennings asked to speak to an EEO counselor.

On July 7, 2010, Clegg told Jennings that she didn't "have any more flex time." Jennings Dep. at 85:15-16.

On August 29, 2010, Jennings filed an EEO formal complaint alleging discrimination on the basis of race, color, physical disability, and sex, and she also indicated that she suffered retaliation. Her complaint also included the fact that she had not been selected for a permanent Contact Representative position.

After Jennings filed her complaint, her computer began malfunctioning. Incorrect information would come up on her computer screen or change right before her eyes, and when Jennings would return to her desk, the computer would be on. Jennings submitted many help requests and spent hours on the telephone with IT personnel.

Clegg learned that Jennings had filed an EEO complaint on September 21, 2010.[2]

Additional relevant facts are addressed in the discussion below.

### III. DISCUSSION

In the first week of November 2011, Jennings filed four complaints against the Secretary of the DOD; these complaints have since been consolidated under the above-captioned cause number. Dkt. 16.

---

[2] Jennings' employment with the Center has since been terminated and that termination is the subject of a separate lawsuit. The evidence of record before this Court does not reveal when or why Jennings' discharge occurred.

One of those complaints (1:11-cv-1456-WTL-DKL) incorporates Jennings' EEO complaint and alleges discrimination on the basis of race (Black), color (Black), disability (physical), sex (female), and reprisal. Specifically, Jennings alleges that she was subjected to harassment creating a hostile work environment (non-sexual) when she was closely scrutinized, received insufficient training, and suffered fraudulent changes made to her resume and her supervisory evaluation. She alleges she was retaliated against when her flextime schedule was cancelled. In addition, she was not selected for a permanent position.

The EEO charge underlying the above-described claims was filed on August 29, 2010, and began moving through the EEO administrative process. The other three complaints (1:11-cv-1455-WTL-DML; 1:11-cv-1473-TWP-DML; 1:11-cv-1479-SEB-DML) catalog what Jennings alleges are continuing violations of her rights throughout this process. Examples of these alleged violations include (1) unnecessarily delaying a hearing in order to "distort the truth" and "entrap" Jennings; (2) being asked by her counsel to agree to a lie; (3) subsequent withdrawal of counsel; (4) failure to hear her EEO complaint and fraudulent changes to her charge; (5) the Agency's ignoring her requests for an in-person conference; and (6) the Agency's failure to adhere to her witness requests. Hagel now moves for summary judgment on Jennings' claims.

### A. Discrimination

#### 1. Retaliation

Jennings alleges that Clegg retaliated against her for filing her EEO charge[3] when Clegg cancelled her flex time schedule on July 7, 2010. The Defendant contends that the timing of Jennings' EEO complaint forecloses this claim, and the Court agrees. The undisputed evidence

---

[3] The Court has reviewed the record and sees no evidence that Jennings engaged in any other form of protected activity, such as verbally opposing the race, color, gender, or disability discrimination she alleges.

of record is that Jennings did not contact the EEO counselor until June 21, 2010, did not file her EEO complaint until on or about August 29, 2010, and Clegg did not find out that Jennings had filed a claim until September 21, 2010. There is no evidence that Clegg learned of Jennings' request to meet with an EEO counselor in June 2010. There is, therefore, no evidence that Clegg's cancellation of Jennings' flex time on July 7, 2010, was in retaliation for Jennings' invocation of the EEO process. Accordingly, summary judgment on this claim must be granted.

### 2. Hostile Environment

Jennings contends that she was subjected to a hostile environment between February 2010 and July 7, 2010. This hostile environment included being "closely scrutinized, misinformation regarding training or insufficient training, fraudulent changes made to resume, fraudulent changes to my supervisory evaluations and my flex time was canceled on or about July 2010."[4] Jennings Interr. No. 4, No. 46-5. It is not clear from Jennings' complaint in this Court, her interrogatories, or her deposition what she believes the basis for this discrimination was; however, her EEO charge indicates race, color, disability, and sex. Despite this ambiguity, Hagel contends that he is entitled to summary judgment.

Hostile environment claims involve conduct that is "both subjectively and objectively so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004) (gender). Thus, two common elements in all hostile environment claims are (1) the work environment was both subjectively and objectively offensive; and (2) the conduct was severe or pervasive. *E.g.*,

---

[4] As discussed above, Jennings characterizes the cancellation of her flex time as a retaliatory act, and the Court addresses it in that context.

*Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010) (race)[5]; *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005) (assuming the existence of hostile environment claims under the ADA).

In determining whether conduct renders the workplace hostile, courts consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Court has reviewed all of the evidence before it – including a thorough review of the entirety of Jennings' deposition – and has pinpointed the following evidence falling under the descriptive umbrella of Jennings' EEO complaint. First, after Jennings filed her EEO complaint, "wrong information was coming up on her computer" and "information would just change right before me." Jennings Dep. at 66:6-67:13. Second, a Lead Contact Representative once threw a technology help request form in Jennings' face. *Id.* at 74:14-75:8. Third, Clegg once required Jennings to fill out paperwork for a background check when she had already passed a background check. *Id.* at 94:19-95:25. Fourth, Clegg told Jennings that her resume was formatted incorrectly and Jennings needed to refile it, but Jennings' resume was already on the job application system. *Id.* at 112:19-114:3. Finally, one of Jennings' supervisory reviews was changed because it counseled her to remember to provide callers with a survey, but she testified that she never forgot to do this. *Id.* at 59:12-60:23. Apart from these incidents, Jennings testified that the training she received was insufficient because a coworker once told her that she had done something improperly. *Id.* at 90:7-91:3. Although the Court does not doubt that Jennings found

---

[5] To the extent that discrimination on the basis of color constitutes a distinct form of discrimination, *see* Trina Jones, *Intra-Group Preferencing: Proving Skin Color and Identity Performance Discrimination*, 34 N.Y.U. Rev. L. & Soc. Change 657, 664 n.22 (2010), a hostile environment based on color would nevertheless include these elements.

these actions offensive, no reasonable jury could find that the conduct described above rendered Jennings' work environment objectively offensive, nor could a reasonable jury find that the conduct she suffered was severe or pervasive. Accordingly, regardless of the basis alleged for this conduct, Hagel is entitled to summary judgment on this claim.

### 3. *Failure to Promote*

Jennings alleges that Clegg did not select her for two positions for which she applied – the temporary Contact Representative position and the permanent Contact Representative position. It is again unclear what Jennings believes Clegg's motive for denying her these positions was, but her EEO complaint generally implicates race, color, disability, sex, and retaliation.

As an initial matter, Jennings' claim for failure to hire her for the temporary Contact Representative is simply illogical. Jennings was not hired for the temporary Contact Representative Position because she was hired for the term Contact Representative Position.[6] With regard to the permanent Contact Representative position, the evidence is undisputed that the Recruiting and Placement office did not receive an application from Jennings for a permanent Contact Representative position. The Court has found no contrary evidence in the record before it. Accordingly, no inference of discriminatory motive arises, and Hagel is entitled to summary judgment on this claim.

### B. EEO Process

Finally, Hagel contends that he is entitled to dismissal of Jennings' claims regarding alleged violations of her rights during the EEO process. Indeed, no cause of action against an agency EEO for its failure to process, or deficient process of, a charge of discrimination exists

---

[6] There is no evidence to suggest that a temporary position was preferable to a term position.

under Title VII. *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000). Accordingly, Jennings' claims regarding the EEO process do not state claims upon which relief can be granted, and Hagel is entitled to judgment as a matter of law.

## IV.     CONCLUSION

Defendant Chuck Hagel's motion for summary judgment is **GRANTED** as to Jennings' discrimination, hostile environment, and retaliation claims, as well as her claims regarding the EEO process.

SO ORDERED:  06/17/2013

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

**Copies by United States mail to**      Laura A. Jennings
P.O. Box 18178
Indianapolis, IN 46218